817 A.2d 241

**Calvin BROWN**

v.

**STATE of Maryland.**

**No. 37, Sept. Term, 2002.**

Court of Appeals of Maryland.

Feb. 24, 2003.

Mark Colvin, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Devy Peterson Russell, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

Calvin Brown was convicted by a jury of second degree assault in violation of Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.) Article 27, § 12A (current version at Maryland Code (2002) § 3–203 of the Criminal Law Article). Although he placed his prior conviction for possession of a controlled dangerous substance with intent to distribute before the jury in his direct examination, he contends on appeal that the trial court erred when it ruled that the evidence of his conviction was admissible for impeachment purposes. The question we must decide in this case is whether a defendant waives the right to challenge on appeal the propriety of the trial court ruling when the defendant introduces the prior conviction in his direct testimony.

Petitioner and a co-defendant were charged with assaulting Damon Mitchell, a correctional officer, as Mitchell was walking toward his home. At the conclusion of the State's case in chief, defense counsel argued to the court that although petitioner's 1993 criminal conviction fell within the universe of crimes admissible for impeachment purposes under Maryland Rule 5–609,[1] the probative value of the evidence was outweighed by the danger of unfair prejudice. The court ruled that the conviction was more probative than prejudicial and that the State would be permitted to impeach petitioner with the conviction.

Petitioner elected to testify on his own behalf. During his direct examination, petitioner admitted that he had been convicted of the criminal offense of possession with intent to distribute a controlled dangerous substance. On cross-examination, in response to the State's question, petitioner confirmed the conviction. The jury convicted petitioner and the trial court sentenced him to a term of imprisonment of eight years.

Brown noted a timely appeal to the Court of Special Appeals. In an unreported opinion, that court affirmed, holding, *inter alia,* that when a party introduces evidence of a criminal conviction during his or her direct testimony, any objection to the admissibility is waived. Chief Judge Murphy, in a concurring opinion, would have held that the issue was preserved for appeal but that the trial judge did not abuse his discretion in finding that the probative value outweighed the prejudicial effect. We granted Brown's petition for writ of certiorari.

---

1. Maryland Rule 5–609(a) reads as follows:
 "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if (1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party."

*Brown v. State*, 369 Md. 570, 801 A.2d 1031 (2002). We shall affirm the Court of Special Appeals.

Petitioner argues before this Court that the trial court erred in admitting evidence of his prior conviction for impeachment purposes. Petitioner asserts that he is entitled to introduce evidence of his prior conviction in order to minimize the prejudicial impact before the jury, and that application of the waiver rule is fundamentally unfair. On the merits, he contends that the trial court erred in admitting the conviction for impeachment purposes because the prejudicial effect substantially outweighed the probative value. Petitioner acknowledges that waiver ordinarily is a bar when a party offers evidence and on appeal objects to its introduction. Petitioner argues for an exception to the waiver rule to allow a defendant to "draw the sting" by preemptively offering evidence of prior convictions where the trial court has already "clearly and unequivocally" ruled on their admissibility.[2]

The act of preemptively disclosing evidence of a defendant's prior convictions on direct examination has been variously characterized as "drawing the sting," "lancing the boil," and "inoculating the jury." L. Timothy Perrin, *Pricking Boils, Preserving Error: On the Horns of a Dilemma After Ohler v. United States*, 34 U.C. Davis L.Rev. 615, 616 (2001). Regardless of terminology, the process of eliciting such testimony is a trial strategy designed to achieve one or more tactical advantages. The most common reasons for such disclosure include:

> "(1) the trier of fact is more likely to trust and respect an advocate or a witness who 'volunteers' harmful information; (2) the disclosure avoids the risk that the trier of fact will believe that the party or witness concealed the damaging

---

**2.** Petitioner's request for us to create an exception to the general rule on waiver takes us down a slippery slope that we are unwilling to follow. For example, why should there not be an exception for the tactical decision of a party to introduce preemptively evidence of other crimes that may be admissible to show identity under Md. Rule 5–404(b) or an exception where a party enters into a stipulation as to admissibility of evidence to avoid the prejudicial impact of the details of that evidence?

material; and (3) the advocate retains a measure of control over the disclosure of the perceived weaknesses and can couch the disclosure as sympathetically as possible."

*Id.* at 616–17. The prevailing attitude amongst both practitioners and scholars of trial advocacy is that preemptive disclosure is a common and effective tactic for dealing with the threat of impeachment by prior conviction.[3]

 It has been a long held principle of common law and the law of this State, however, that "a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted." *Ohler v. United States,* 529 U.S. 753, 755, 120 S.Ct. 1851, 1853, 146 L.Ed.2d 826 (2000), citing 1 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 103.14, 103–30 (2d ed.2000); *Mills v. State,* 310 Md. 33, 69, 527 A.2d 3, 20 (1987), *judgment vacated on other grounds,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) (holding that defendant could not complain of the inadmissibility of evidence he had introduced on direct examination); *Hillard v. State,* 286 Md. 145, 155–56, 406 A.2d 415, 421 (1979) (reaffirming "the longstanding rule in this State ... that the admission of improper evidence cannot be used as grounds for reversal where the defendant gives testimony on direct examination that establishes the same facts as those to which he objects"); *Peisner v. State,* 236 Md. 137, 146, 202 A.2d 585, 590 (1964) (noting that "[w]hatever advantages the best evidence rule might have afforded the [defendant] were waived and discarded by the [defendant] himself"); *Bean v. State,* 234 Md. 432, 444, 199 A.2d 773, 779 (1964) (holding that "[h]aving brought up the subject, the [defendant] is hardly in a position to claim that the testimony ... was not admissible"); *Jensen v. State,* 127 Md.App. 103, 126–27, 732 A.2d 319, 331–32 (1999) *cert. denied,* 356 Md. 178, 738 A.2d 855 (1999) (refusing to consider effect of alleged prejudicial "bad acts" evidence "because [the

---

**3.** *But see* Robert H. Klonoff & Paul L. Colby, *Sponsorship Strategy* (1990) (expressing a minority view that the disclosure of convictions by defense counsel is likely to exaggerate the importance of the damaging material in the eyes of the jury, yet fail to win enhanced credibility for the defense).

defendant] introduced this evidence, she cannot now complain about its admission"); *Johnson v. State,* 9 Md.App. 166, 177, 263 A.2d 232, 239 (1970) *aff'd after remand,* 9 Md.App. 436, 265 A.2d 281 (1970) (observing that "if the prior conviction was introduced by the defendant himself rather than the State, he thereby waives objection"). Maryland courts consistently have applied the waiver rule in civil cases as well. *See e.g., Reed v. Baltimore Life Ins. Co.,* 127 Md.App. 536, 559, 733 A.2d 1106, 1118 (1999) (holding that appellant could not complain on appeal about the source of evidence when he provided the information to the court himself). This rule, recognized repeatedly by this Court, is stated in 1 J. Strong, *McCormick on Evidence,* § 55 (5th ed.1999):

> "If a party who has objected to evidence of a certain fact himself produces evidence from his own witness of the same fact, he has waived his objection.... However, when his objection is made and overruled, he is entitled to treat the ruling as the 'law of the trial' and to explain or rebut, if he can, the evidence admitted over his protest."

The issue petitioner presents for our review in the instant case was considered by the Supreme Court in *Ohler v. United States,* 529 U.S. 753, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000). The Court, in a five-to-four decision based on non-constitutional grounds, held that a defendant waives any error in the trial court's preliminary ruling permitting impeachment by a prior conviction when the defendant preemptively introduces the evidence in her own testimony. *Id.* at 760, 120 S.Ct. at 1855, 146 L.Ed.2d 826. Although not binding on this Court, we agree with the majority's reasoning in *Ohler.* In a motion *in limine,* the Government sought a preliminary ruling by the trial court to determine whether the defendant's prior conviction was admissible as impeachment evidence. The trial court determined that the conviction was admissible for impeachment purposes. On direct examination, Ohler admitted her prior conviction.

On appeal, Ohler argued that it would be unfair to apply the waiver rule. She argued that although one cannot complain on appeal of evidence introduced by that person, the Court

should create an exception where the conviction would be presented by the prosecution in any event. The Supreme Court declined to create such an exception, holding that "a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error." *Id.* at 760, 120 S.Ct. at 1855, 146 L.Ed.2d 826.

The Court noted that whatever merits Ohler's contentions may have, "they tend to obscure the fact that both the Government and the defendant in a criminal trial must make choices as the trial progresses." *Id.* at 757, 120 S.Ct. at 1854, 146 L.Ed.2d 826. The defendant must choose whether to take the stand and testify, and if she decides to testify, she must choose whether to remove the sting or take her chances. Similarly, the Government must choose whether or not to use the defendant's prior conviction against her. As a result, "any possible harm flowing from a [trial court's] *in limine* ruling permitting impeachment by a prior conviction is wholly speculative." *Id.* at 759, 120 S.Ct. at 1854, 146 L.Ed.2d 826 (quoting *Luce v. United States,* 469 U.S. 38, 41, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984) (holding defendant who chose not to testify at trial waived the right to appeal an *in limine* ruling permitting the Government to impeach with evidence of prior conviction)). In addition the Court observed that Ohler's position would deprive a trial judge of the opportunity to change its mind during the course of the trial after hearing all of the defendant's testimony. *Id.* at 758 n. 3, 120 S.Ct. at 1854 n. 3, 146 L.Ed.2d 826.

The Court of Special Appeals in the instant case agreed with the reasoning set out in *Ohler.* Judge Getty, writing for the panel, noted:

"We fail to see how the decision in *Ohler* was unfair to an accused who unquestionably seeks to present to the jury an image of one who is credible and willing to admit his earlier transgressions and then abandons that approach on appeal and claims, "I wuz robbed!" Where the question of prior conviction arises, and the court rules that a prior conviction is admissible, both sides have decisions to make. The

defendant can admit the offense and hope the admission will favorably impress the jury, or he can conclude that the State will not offer the evidence and, if they do so, he can object and attack the court's ruling on appeal. The State must also resolve whether to offer the evidence and run the risk of reversal or to rely instead on the strength of the testimony produced at trial The court ought not allow the accused to gain whatever advantage preemption bestows and then allow him redress for self-inflicted wounds."

The precise issue in the instant case was addressed, in *dicta,* by Judge Orth, in *Johnson v. State,* 9 Md.App. 166, 263 A.2d 232 (1970). Rejecting the defendant's position, the court said:

"If timely objection is not made below the question of the admissibility of a prior conviction is not preserved for appeal.... And we observe that if the prior conviction was introduced by the defendant himself rather than by the State, he thereby waives objection. If he so offers the conviction, probably as a matter of trial strategy to soften the anticipated blow in the eyes of the trier of fact, he cannot be heard to complain that his own act of offering such evidence violated his constitutional rights."

*Id.* at 177, 263 A.2d at 239.

Our reasoning in *Jordan v. State,* 323 Md. 151, 591 A.2d 875 (1991) is analogous and therefore instructive. In *Jordan,* the defendant's confession, although voluntary, was inadmissible in the State's case in chief because the defendant had not knowingly waived his right to counsel. The trial court ruled the confession was admissible *if* the defendant testified, for impeachment purposes only. The defendant did not testify at trial. On appeal, Jordan challenged the ruling as to the admissibility of the statement. We held that the trial court's ruling as to the admissibility of the statement for impeachment purposes was not preserved for appeal where, for tactical reasons, the defendant chose not to testify, thereby precluding the State from utilizing the evidence. *Id.* at 156, 591 A.2d at 877. We stated there could be no review of a ruling

allowing for the admission of evidence unless the evidence were actually introduced at trial. *Id.* at 158–59, 591 A.2d at 878–79. Any harm from an erroneous ruling by the trial court was speculative, because the State might have chosen not to use the "arguably inadmissible" evidence to impeach. *Id.* at 158–59, 591 A.2d at 878 (quoting *Luce,* 469 U.S. at 42, 105 S.Ct. at 463, 83 L.Ed.2d at 448).

Petitioner's position also runs counter to the requirement in Maryland for a contemporaneous objection to the admission of evidence. *See* Maryland Rule 4–323(a). Although petitioner initially objected to the use of the conviction prior to testifying, there obviously was no objection when he introduced the conviction in his direct examination. Further, when the State asked him about the conviction, there was no objection.

In a split decision, this Court recently reaffirmed its commitment to the requirement of a contemporaneous objection to the admissibility of evidence in order to preserve an issue for appellate review. *See Reed v. State,* 353 Md. 628, 728 A.2d 195 (1999). We reiterated the general rule in Maryland that "where a party makes a motion *in limine* to exclude irrelevant or otherwise inadmissible evidence, and that evidence is subsequently admitted, the party who made the motion ordinarily must object at the time the evidence is actually offered to preserve [its] objection for appellate review." *Id.* at 637, 728 A.2d at 200 (quoting *Prout v. State,* 311 Md. 348, 356, 535 A.2d 445, 449 (1988)). We held that where a motion *in limine* has the effect of admitting evidence at trial, "failure to object results in the non-preservation of the issue for appellate review." *Id.* at 637, 728 A.2d at 200. Discussing the contemporaneous rule, the Court said:

"the [contemporaneous objection] rule generally promotes consistency and judicial efficiency.... Much can happen in a trial prior to the offering of disputed evidence that can affect its admissibility. When the contemporaneous objection rule applies, the subsequent course of the trial as to admissibility issues generally will be controlled by the rulings of the trial judge, rulings generated by the events as they have unfolded during the trial."

*Id.* at 641–43, 728 A.2d at 202–03. The same rule was expressed in *Klauenberg v. State,* 355 Md. 528, 735 A.2d 1061 (1999). Judge Cathell, writing for the Court, said:

> "[P]ursuant to Maryland Rule 4–323(a), 'an objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived.' In addition, we recently have reaffirmed that when a motion *in limine* to exclude evidence is denied, the issue of the admissibility of the evidence that was the subject of the motion is not preserved for appellate review unless a contemporaneous objection is made at the time the evidence is later introduced at trial."

*Id.* at 539–40, 735 A.2d at 1067 (citations omitted). *See also, Prout v. State,* 311 Md. 348, 356–57, 535 A.2d 445, 449 (1988); *Hickman v. State,* 76 Md.App. 111, 116–17, 543 A.2d 870, 873 (1988) (Bell, J.).

We hold that petitioner may not now complain that the evidence that he introduced himself in his direct testimony was not admissible. By introducing the evidence of his prior convictions in his direct testimony, he has waived the issue for appellate review. There was no objection to the testimony; it is speculative as to whether the State would have introduced the evidence; and the trial court was deprived of the opportunity to hear petitioner's entire testimony in context to reevaluate its decision as to whether the prejudice of the conviction substantially outweighed the probative value.

Petitioner argues that he is entitled to "play down" the significance of adverse evidence, and that the implementation of the waiver rule will give him a "Hobson's choice of either mitigating the damage to his witness by introducing impeachment evidence on direct examination, or preserving for review on appeal the error of a ruling already made." [4] We agree

---

4. We explained a Hobson's choice in *Hook v. State,* 315 Md. 25, 553 A.2d 233 (1989) as not having a choice at all. We defined the term as:

> "After Thomas Hobson, 1631 English liveryman, from his practice of requiring every customer to take the horse which stood nearest the

that precluding an appeal following preemptive disclosure presents a defendant with a dilemma. Nonetheless, to overcome the waiver rule, a defendant must be faced with more than a strategic decision.

In contrast to petitioner, the defendant in *Beverly v. State*, 349 Md. 106, 707 A.2d 91 (1998) *was* faced with a Hobson's choice. The defendant had worked out a plea agreement with the State but the trial judge mistakenly believed he could not implement the terms of the agreement. The defendant was permitted to withdraw the guilty plea, and following a trial, he was convicted. On appeal, the State argued that the defendant's withdrawal of the plea constituted a waiver of the issue. Finding waiver not applicable, this Court stated:

> "We do not believe that the defendant, having been told that the court could not legally follow the plea agreement, should be required to plead guilty in order to challenge the trial judge's legal conclusion, knowing that the court would not follow the plea agreement."

*Id.* at 119, 707 A.2d at 97. In *Beverly,* it was not the case of a defendant making a tactical decision as to his trial strategy; rather, a defendant is not required to relinquish a constitutional right to a trial solely to contest an erroneous legal ruling.

In *United States v. Williams,* 939 F.2d 721 (9th Cir.1991), a case pre-dating *Ohler,* the defendant, faced with an adverse ruling on the admissibility of a conviction for impeachment purposes, chose to present evidence of the conviction in his direct testimony. The court held that the defendant's claim that the trial court erred in allowing impeachment by prior conviction was waived by defendant's preemptive testimony. *Id.* at 723. "While the choice between preempting the prosecution and preserving the ... objection for appeal may be

---

door. Thus, the forced acceptance of something whether one likes it or not; the necessity of accepting something objectionable through the fact that one would otherwise get nothing at all; something that one must accept through want of any real alternative."
*Id.* at 38 n. 18, 553 A.2d at 240 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED (1981)).

perilous, it is no more so than many other decisions defense attorneys must make at trial." *Id.* at 725. The court was influenced by the Supreme Court's discussion in *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), and the holding that in order to preserve for review the claim of improper impeachment with a prior conviction, a defendant must first testify. *Id.* at 724 (citing *Luce*, 469 U.S. at 43, 105 S.Ct. at 464, 83 L.Ed.2d 443). The court relied in part on the following quote from *Luce:*

> "A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify."

*Luce*, 469 U.S. at 41, 105 S.Ct. at 463, 83 L.Ed.2d 443. The same reasoning holds true when a party presents evidence of a criminal conviction in direct testimony. The trial court is deprived of the opportunity to change its ruling after hearing the testimony in context. As the Supreme Court stated, "there is nothing 'unfair' ... about putting petitioner to [his] choice in accordance with the normal rules of trial." *Ohler*, 529 U.S. at 759, 120 S.Ct. at 1855, 146 L.Ed.2d 826.

Petitioner urges this Court to follow the lead of several of our sister states that have rejected the Supreme Court approach adopted in *Ohler*. We decline to accept his invitation. The holding in those cases was consistent with the general approach in those states that a party has a right to introduce mitigating evidence and is not precluded from appealing the admissibility of that evidence even though he introduced the evidence himself. *See e.g., State v. Daly*, 623 N.W.2d 799, 801 (Iowa 2001) (holding that defendant may introduce preemptively evidence of criminal convictions without waiver of right to assert error on appeal; under Iowa law, however, "the rule of waiver is contrary to established precedent"); *State v. Thang*, 145 Wash.2d 630, 41 P.3d 1159, 1168 (2002) (holding

defendant may introduce mitigating evidence preemptively; "[i]n Washington, case law indicates a tendency to protect the defendant's right to introduce mitigating testimony"); *People v. Carpenter*, 21 Cal.4th 1016, 90 Cal.Rptr.2d 607, 988 P.2d 531, 556 (1999) (holding that defendant could introduce the convictions first rather than wait until presented by prosecution and still appeal; under California law, however, pre-trial objection need not be renewed at trial to preserve error); *State v. Mueller*, 319 S.C. 266, 460 S.E.2d 409, 410–11 (App. 1995) (holding that defendant could bring out conviction on direct examination and then challenge validity of ruling on appeal; under South Carolina law, however, defendant need not renew earlier objection to admission of testimony to preserve issue for appeal). As we have discussed *supra*, Maryland jurisprudence is otherwise. The Vermont Supreme Court simply declined to follow the reasoning in *Ohler*, concluding that it was an extension of the Court's reasoning in *Luce*. *See State v. Keiser*, 807 A.2d 378, 388 (Vt.2002). In our view, the ruling does not extend *Luce*, but rather, is a consistent application of *Luce*. Furthermore, the ruling in *Ohler* and our holding today are consistent with our jurisprudence on appellate procedure, specifically, the traditional rules on waiver and the requirements of preservation of error.

Because petitioner waived his right to appeal the trial court's ruling, we need not decide whether the trial court erred when it determined that petitioner's prior conviction for possession of a controlled dangerous substance with intent to distribute was admissible for impeachment purposes.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.*

Announcing the judgment of the Court HARRELL, J. concurs in the judgment.

Concurring opinion by HARRELL, Judge.

As Judge Wilner points out in his dissent (Dissent, op. at 251), I am responsible for the "peculiar setting" here. As he explains, I agree with Part (2) of the Dissent rejecting the

majority view in *Ohler v. United States*, 529 U.S. 753, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000) and instead concluding that there was no waiver in the instant case (Dissent, op. at 257–66), but I would hold that the evidence of Brown's prior conviction for possession of CDS with intent to distribute was admissible. Other than stating that I do *not* support overruling *State v. Giddens*, 335 Md. 205, 642 A.2d 870 (1994) or *State v. Woodland*, 337 Md. 519, 654 A.2d 1314 (1995), I need elaborate only why I believe the trial court did not abuse its discretion in admitting evidence of Brown's prior conviction. *See* Dissent, op. at 273.

The trial judge explicated his ruling to allow use of Brown's prior conviction as impeaching evidence as follows:

THE COURT: As I'm sure the State intended to refer me to *Jackson v. State*,[1] the guidelines that are set forth therein in determining whether a prior conviction is admissible under Maryland Rule 5–609,[2] that's a series of questions that the Court is to answer. First, is the prior conviction within the universe too admissible. That is, infamous

---

1. *Jackson v. State*, 340 Md. 705, 668 A.2d 8 (1995).

2. Md. Rule 5–609, as relevant to the trial judge's analysis, provides:

**Rule 5–609. Impeachment by evidence of conviction of crime.**
(a) **Generally.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if (1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.
(b) **Time limit.** Evidence of a conviction is not admissible under this Rule if a period of more than 15 years has elapsed since the date of the conviction.
(c) **Other limitations.** Evidence of a conviction otherwise admissible under section (a) of this Rule shall be excluded if:
(1) the conviction has been reversed or vacated;
(2) the conviction has been the subject of a pardon; or

crimes or crimes relevant to [the] witness'[s] credibility. Of course, the *Jackson v. State Court* said that drug felonies are such offenses.[3]

The second is a conviction less than fifteen years old. Yes, as the parties agree, a conviction is timely in that sense.[4]

So finally we're left to weigh the probative value versus unfair prejudice to the Defendant. And in looking at the things that *Jackson v. State* sets forth including, one, the impeachment value of the prior crime, we have to take the Court of Appeals at its word that drug felonies are impeachables. They do impeach one's credibility. So, yes, it is one that is recognized although perhaps not universally recognized as reflecting upon the witness' honesty.

The time in conviction of the earlier offense is over six years ago, tends to lessen its prejudicial value. The similarity between the earlier crime and the charged crime, the similarity would weigh against admission, and in this case they're not similar. So it weighs in favor of admission.

Upon consideration of the items enumerated in *Jackson v. State,* I find that the conviction is more probative and accordingly will permit the State to impeach.

Given the unquestioned applicability of the Rule 5–609 factors and the now renewed vitality of *Giddens* and *Woodland,* the trial court's analysis and conclusions as to the legal considerations (eligibility of prior conviction to be used and eligible conviction must be less than 15 years old) are flawless. The only other factor requiring comment is the weighing of probity versus unfair prejudice. Deliberation regarding this

---

(3) an appeal or application for leave to appeal from the judgment of conviction is pending, or the time for noting an appeal or filing an application for leave to appeal has not expired.

\* \* \*

3. Not only is this conclusion supported by *Woodland,* 337 Md. at 524, 654 A.2d at 1316, Brown concedes such in his brief to this Court (Petitioner's Brief at 29).

4. The relevant conviction was six years old at the time of trial.

factor is committed in the first instance to the sound discretion of the trial court. *Giddens,* 335 Md. at 214, 642 A.2d at 874. Although a strong presumption of correctness attaches to the trial judge's conclusion reached after engaging in this balancing test (*Woodland,* 337 Md. at 526, 654 A.2d at 1317; *Beales v. State,* 329 Md. 263, 273, 619 A.2d 105, 110 (1993)), we are not reluctant to overturn such a conclusion where an abuse of discretion or error of law is found.

A brief reflection on the abuse of discretion standard of appellate review is in order.

"Abuse of discretion" is one of those very general, amorphous terms that appellate courts use and apply with great frequency but which they have defined in many different ways. It has been said to occur "where no reasonable person would take the view adopted by the [trial] court," or when the court acts "without reference to any guiding rules or principles." It has also been said to exist when the ruling under consideration "appears to have been made on untenable grounds," when the ruling is "clearly against the logic and effect of facts and inferences before the court," when the ruling is "clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result," when the ruling is "violative of fact and logic," or when it constitutes an "untenable judicial act that defies reason and works an injustice."

There is a certain commonality in all of these definitions, to the extent that they express the notion that a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable. That kind of distance can arise in a number of ways, among which are that the ruling either does not logically follow from the findings upon which it supposedly rests or has no reasonable relationship to its announced objective. That, we think, is included within the notion of "untenable grounds," "volatile of fact

and logic," and "against the logic and effect of facts and inferences before the court."

*North v. North,* 102 Md.App. 1, 14, 648 A.2d 1025, 1032 (1994) (internal citations omitted). Similarly, in *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 701 A.2d 110 (1997), we described "abuse of discretion" as follows:

Judicial discretion was defined in *Saltzgaver v. Saltzgaver,* 182 Md. 624, 635, 35 A.2d 810, 815 (1944) (quoting Bowers' Judicial Discretion of Trial Courts at P 10) as "that power of decision exercised to the necessary end of awarding justice and based upon reason and law, but for which decision there is no special governing statute or rule." It has also been defined as a "reasoned decision based on the weighing of various alternatives." There is an abuse of discretion "where no reasonable person would take the view adopted by the [trial] court," or when the court acts "without reference to any guiding rules or principles." An abuse of discretion may also be found where the ruling under consideration is "clearly against the logic and effect of facts and inferences before the court," or when the ruling is "volatile of fact and logic."

Questions within the discretion of the trial court are "much better decided by the trial judges than by appellate courts, and the decisions of such judges should only be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred." In sum, to be referenced "the decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable."

347 Md. at 312–13, 701 A.2d at 118–19 (internal citations omitted).

Regarding the probity versus unfair prejudice analysis and conclusion in the instant case, I cannot say that the trial judge abused his discretion or erred as a matter of law. Although the danger of unfair prejudice is heightened where the prior conviction and pending charge are identical or similar (*Jack-*

*son,* 340 Md. at 715, 668 A.2d at 13), that was not the case here. Brown was on trial for second degree assault. The impeaching prior conviction was for possession of CDS with intent to distribute. These offenses manifestly are neither identical nor similar. While it is true that the contextual background of the charged crime for which Brown was tried and convicted involved allegations of earlier friction between Brown, the co-defendant (Avon Brown), and others with the victim over the former's drug-selling in the victim's neighborhood, it was not an abuse of the trial judge's discretion to view the attenuated relationship of a prior CDS conviction to the background facts of this case as not presenting the most heightened danger of unfair prejudice previously recognized in our cases.

Regarding the weighing of the fourth and fifth considerations mentioned in *Jackson*—importance of the defendant's testimony and centrality of the defendant's credibility—, we said "[w]here credibility is the central issue, the probative value of impeachment is great, and thus weighs heavily against the danger of unfair prejudice." 340 Md. at 721, 668 A.2d at 16 (internal citations omitted). Here, Brown's credibility and that of the co-defendant were as central to the case as the victim's. The Dissent's recounting of the competing evidence from the State and the defense (Dissent, op. at 252–57) clearly makes that point.

Therefore, as Chief Judge Murphy stated in his concurring opinion in the Court of Special Appeals in this case, "[the trial judge] neither erred nor abused his discretion in permitting the impeachment by conviction evidence at issue in this case." I join in this Court's judgment affirming the judgments of the Court of Special Appeals and the Circuit Court for Baltimore City.

Dissenting opinion by WILNER, Judge, in which BELL, Chief Judge, and ELDRIDGE, Judge, join.

This is a peculiar setting. Judge Raker's opinion announces the judgment of the Court. She would hold that by revealing

his prior conviction on direct examination, petitioner waived any right to complain about the trial court's earlier ruling that evidence of that conviction was admissible. Only two other judges share that view, however. I disagree with it, as do Chief Judge Bell and Judge Eldridge. Although Judge Harrell agrees that the issue was not waived, he would hold that evidence of the conviction was nonetheless admissible. I disagree with that as well; so do Chief Judge Bell and Judges Eldridge and Raker. When coupled with Judge Raker's view that petitioner's complaint was waived, however, Judge Harrell's conclusion as to admissibility suffices to create four votes to affirm the judgment. Ultimately, therefore, this opinion is a dissenting one. Four judges, and therefore the Court, would affirm the judgment; I would reverse it.

## FACTUAL BACKGROUND

Judge Raker's opinion, resting solely on the notion of waiver, does not consider the underlying facts of the case. They *are* important, however, even on the question of waiver.

There was legally sufficient evidence adduced in this case to show that Damon Mitchell, the victim, was assaulted by six people, including petitioner, as he was returning to his home. How the affray commenced and proceeded, Mitchell's role in it, and the degree of petitioner's participation were in substantial dispute, however, and, in judging even the waiver issue before us, we need to look at the evidence in a light most favorable to the petitioner.

The issue of petitioner's prior drug dealing surfaced initially in the context of a pre-trial motion *in limine*. The State intended to present evidence that the motive behind the assault was that, for a two-month period preceding the assault, petitioner and others were continually on Mitchell's property engaging in drug transactions and that Mitchell had repeatedly called the police. The assault, theorized the State, was in retaliation for that effort. Both petitioner and his co-defendant, Avon Brown (Avon), moved to exclude that evidence, which they regarded as unduly prejudicial evidence of prior

bad acts. Seemingly of the view that the citizens of Baltimore City were so accustomed to drug dealing in their neighborhoods that evidence of it would not be unduly prejudicial, the court denied the motion.[1]

That ruling opened the way for Mr. Mitchell and his wife to testify about a group of "guys," including petitioner, who "hung around" in front of his house and engaged in transactions with passing motorists that, by almost necessary implication, constituted drug dealing. Petitioner, he said, usually stayed across the street but occasionally came to his steps to talk with Mitchell's 18-year-old daughter, Gloria. Petitioner and Gloria were more than friends; he was the father of her child. Mitchell warned petitioner against selling drugs in front of his house and threatened to call the police. He did call the police—sometimes seven times a night five days a week, he said—but the group scattered whenever they saw the police arriving. On one occasion, he led the police into the alley where the group ran, leading to the discovery of some capsules. It was never clear whose capsules they were or what, if anything, they contained.

Mitchell said that the assault occurred as he and his wife were returning by separate cars to Mitchell's home.[2] Mrs. Mitchell arrived first and waited for him on the steps to his house. As he neared the house after parking his car, Avon, whom he did not know, approached, pulled a knife, asked whether Mitchell wanted to die, and commented, "You like calling the cops on people." Mitchell was a correctional

---

1. The court said that it was "convinced actually that—for most Baltimore citizens it's perhaps one of the sad consequences of having the huge quantity of drug sales going on. But the act itself is just not any longer the sort of thing that automatically inflames ... I just can't say that allegations or hints of drug sales or, I guess, the victim's assumptions about drug sales to be more precise, are in themselves so inflammatory as to deny the defense a fair trial."

2. Mitchell and his 37-year-old wife were then separated. Indeed, there was evidence that she was dating a 19-year-old friend of petitioner, one Wade Spriggs, who figured prominently in the defense theory of what occurred.

officer, approximately seven inches taller than Avon and accustomed to confrontations, and he knew he might be facing some trouble. He therefore removed his glasses in preparation for the coming fray. Someone else, whom he said he did not know—thus excluding petitioner, whom he *did* know—then hit him, knocking him to his knees. As he got up, he heard his wife scream and saw Avon grab her, at which point Mitchell seized Avon by the throat. "Next thing I know," he said, "it was six, seven, eight guys on top of me." One of them was petitioner, who hit him in the face. It appears from Mitchell's testimony that the worst of the assault—kicking and stomping—was committed by Avon Brown and that petitioner did not strike him until after he had grabbed Avon by the throat.

Some of the force of Mitchell's direct examination was eroded both on his cross-examination and by other evidence. Mr. Mitchell admitted that it was only Avon Brown who initially approached him—that the others stood back against a car. He admitted that he had asked the State to drop the charges against petitioner and that, in describing the attack to the officer who first responded, he did not mention petitioner and did not mention anyone having a knife. On cross-examination, he said that he grabbed Avon from behind when he saw Avon *approach* his wife, not grab her. Mrs. Mitchell stated that Wade Spriggs was initially in the group, although she said he was not involved in the assault.

Mrs. Mitchell's testimony also cast the affray as being initially between her husband and Avon. He was the one who approached Mr. Mitchell, pulled a knife, and accused him of calling the police. While the two were arguing, someone "out of nowhere" punched Mitchell. She said that, when Avon "came towards me," she hollered and Mitchell grabbed him and "put him in a choke hold." At that point, petitioner hit Mitchell and someone else began to kick him. The final witness for the State was Detective Wallace, who saw Mitchell at the hospital after the attack. Mitchell identified Avon and petitioner as two of the assailants. Wallace confirmed that

the initial police report made by the first officer on the scene did not mention petitioner as an assailant.

When the State rested, petitioner moved to preclude the State from introducing evidence of his 1993 conviction for possession with intent to distribute a controlled dangerous substance. He conceded that, under existing case law (*State v. Woodland*, 337 Md. 519, 654 A.2d 1314 (1995)), such a conviction was within the universe of crimes admissible as impeachment evidence and noted that, under ordinary circumstances, he would not be concerned, in an assault case, that a drug conviction would be unduly prejudicial, there being no similarity between the two crimes. Given that the court, over objection, permitted the State to offer evidence of petitioner's drug dealing as underlying the alleged motive for the assault, however, counsel urged that there *was* an affinity that would make evidence of the conviction particularly prejudicial and beyond remedy by a curative instruction. Because the conviction was more than six years old and occurred when petitioner was a teenager, counsel argued that the probative value was not great and that its prejudicial effect—the danger that the jury might take it as propensity evidence to bolster Mitchell's testimony about the drug dealing—would outweigh its probative value.

Though acknowledging that the evidence would be "somewhat prejudicial," the State nonetheless insisted that it was admissible and the court agreed, concluding that "the conviction is more probative than prejudicial and accordingly [the court] will permit the State to impeach." That ruling, as noted, came at the end of the State's case.

Avon, the co-defendant, testified before petitioner. He said that he and petitioner were in front of Mitchell's home talking to two girls, who lived either in Mitchell's house or next door, when Mrs. Mitchell arrived and stood on the steps. He then saw Mr. Mitchell walking toward the house, apparently angry, and mumbling, in somewhat inelegant language, about people in front of his house. Avon said that he asked Mitchell whether Mitchell was talking to him, at which point Mitchell

took off his glasses and said that he had had enough. Mrs. Mitchell then threw some keys at Avon, and, as he turned toward her, Mitchell grabbed him. Avon cried for help, and someone hit Mitchell, throwing them both to the ground. Avon denied ever displaying, or even having, a knife (no knife was ever found). He also recounted a conversation with Mitchell that occurred at an earlier hearing in the case, in which Mitchell allegedly acknowledged that Avon was not involved in the assault and suggested that Wade Spriggs had "set him up." A neighbor, who had accompanied Avon to that hearing, corroborated that conversation.

Petitioner then testified, as the last witness. He told essentially the same story as Avon, except that he denied any part in the scuffle. His story was that Mitchell started choking Avon—"got a good choke hold around him"—and that Avon called for help, whereupon Cecil White hit Mitchell, causing them both to fall.[3] At that point, he said, the "guys" from across the street ran over to lend their assistance to Avon. Petitioner said that he remained on the step and did not get involved. When he finished his story, he was asked, and he admitted, that in 1993, when he was nineteen, he was convicted of possession with intent to distribute a controlled dangerous substance and that he had served his penalty. The prosecutor, on cross-examination, had him repeat the fact of his conviction.

The evidence created a clear and genuine jury issue: who started the fight; why would petitioner, who knew Mitchell and was known by him, who knew his daughter and fathered his grandchild, who lived and was known in the neighborhood, attack him? The only motive, the only explanation, offered by the State was that the attack was in retaliation for Mitchell's interference with petitioner's drug business, carried on in front of Mitchell's home. Aside from the testimony from the Mitchells, there was no corroboration that petitioner was

---

3. White had been charged as a co-defendant. On the morning of trial, pursuant to a plea agreement, White pled guilty to second degree assault.

selling drugs. The defense offered some alternative explanations for the affray, each of which was supported by some testimony: that the attack was set up by Mrs. Mitchell's young boyfriend, Spriggs, or that Mitchell was angry and was spoiling for a fight, and that he was attacked only after he grabbed Avon Brown by the throat and Avon cried out for help. This was the setting in which the court overruled petitioner's objection to evidence of the prior conviction and made clear that, if he testified, that evidence would be admitted.

## DISCUSSION

### (1) *Introduction*

My view of the matter is this: First, as most States that have had the opportunity to consider the matter have done, I would reject the view of the majority in *Ohler v. United States,* 529 U.S. 753, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000), which is not binding on us, and hold that, *in the circumstances of this case,* petitioner did not, by drawing the sting, waive his right to complain about the court's ruling that evidence of his prior conviction was admissible. Second, I would overrule *State v. Giddens,* 335 Md. 205, 642 A.2d 870 (1994), and *State v. Woodland,* 337 Md. 519, 654 A.2d 1314 (1995), which I believe were wrongly decided, and hold that possession with intent to distribute a controlled dangerous substance has no clear relationship to one's credibility as a witness and therefore is not within the universe of crimes that is admissible for impeachment purposes under Maryland Rule 5–609. Third, I would hold that, even if *Giddens* and *Woodland* were to remain as precedent, the court erred in concluding, in the circumstances of this case, that the prejudicial effect of that conviction was outweighed by its probative value.

### (2) *Waiver: Ohler v. United States*

Judge Raker weaves three generally valid principles of law together to find a waiver in this case: (1) that a party who introduces evidence in a case may not complain on appeal that

the evidence was erroneously admitted; (2) that, under Maryland Rule 4–323, an objection to the admission of evidence in a criminal case is waived unless it is made at the time the evidence is offered or as soon thereafter as the ground for objection becomes apparent; and (3) that *ordinarily*, a pretrial motion *in limine* to exclude evidence does not suffice to constitute or preserve an objection to the evidence—the objection must be made when the evidence is offered. Those principles are not absolute, however, and, when they have the effect of creating undue prejudice to a testifying defendant in a criminal case, they must yield. Maryland Rule 5–102, which states the general purpose of the rules of evidence, makes clear that one of the functions of those rules is "that the truth may be ascertained and proceedings justly determined." [4]

---

4. The issue of whether a defendant waives appellate review of an *in limine* ruling that evidence of a prior conviction is admissible by revealing the conviction on direct examination was commented on, though not directly raised, in *Giddens v. State*, 97 Md.App. 582, 631 A.2d 499 (1993), a case that will be discussed in greater detail below. Giddens was charged with assault. At the end of the State's case, he stated his intention to testify, at which point the prosecutor indicated her intention to impeach his testimony with a prior conviction of distribution of cocaine. Giddens objected, arguing that the conviction was not admissible for that purpose. The court overruled the objection and determined that the conviction was admissible, whereupon Giddens revealed it during his direct examination and then complained about the ruling on appeal.

At the time, the relevant rule governing the admission of prior convictions as impeachment evidence was Maryland Rule 1–502, the predecessor rule to current Rule 5–609. That rule allowed certain convictions to be used for impeachment purposes "if elicited from the witness or established by public record during cross-examination." A Committee Note to the rule stated that the requirement that the conviction, when offered for purposes of impeachment, be brought out during cross-examination "is for the protection of the witness and is not intended either to authorize or to preclude the party calling the witness from bringing out the conviction on direct examination." The Court of Special Appeals regarded the Committee Note as demonstrating this Court's "awareness of the practice of bringing out this kind of evidence on direct examination to remove the sting of the impeachment" and thus as "an implicit determination by [this] Court that, while there may be circumstances in which revelation of prior convictions ought not to be done on direct examination, the Rule itself does not prohibit that tactic." *Id.* at 587, 631 A.2d at 501 n. 1. The intermediate appellate court noted that the State had not argued waiver in that case but also

Maryland Rule 5–609 permits evidence of a criminal conviction "[f]or the purpose of attacking the credibility of a witness" if the crime is either an infamous one or one that is "relevant to the witness's credibility," certain other requirements are met, and the court determines that the probative value of admitting the evidence outweighs the danger of unfair prejudice to the witness or the objecting party. Any witness, of course, is subject to being impeached with prior criminal convictions under the Rule, but because of the particularly acute danger of prejudice when used, or threatened to be used, against a defendant in a criminal case, we have viewed their use in that context with special caution. *See Ricketts v. State*, 291 Md. 701, 436 A.2d 906 (1981); *Beales v. State*, 329 Md. 263, 619 A.2d 105 (1993); *Jackson v. State*, 340 Md. 705, 668 A.2d 8 (1995).

The threatened use may affect the defendant's decision to testify, which he or she has a Constitutional right to do and, as a practical matter, may need to do in order to meet the State's evidence and establish a defense. If the defendant testifies, evidence of prior criminal convictions, despite limiting instruc-

---

observed that "[i]t is evident from the prosecutor's initial presentation of the issue that, had appellant not confessed the conviction on direct examination, the State would have disclosed it during cross-examination." *Id.* The Court of Special Appeals addressed the issue and ruled that the conviction was inadmissible.

In *State v. Giddens*, 335 Md. 205, 642 A.2d 870 (1994), this Court also addressed the issue on the merits, and, although disagreeing that the conviction was inadmissible, never commented on the implicit determination by the Court of Special Appeals that drawing the sting by revealing the conviction on direct examination, following a ruling that the conviction was admissible, was permissible and did not necessarily preclude the defendant from complaining about that ruling on appeal. When this Court adopted Rule 5–609, it deleted the requirement that the conviction be brought out on *cross*-examination and noted, in a Committee Note that "[t]he requirement that the conviction, when offered for purposes of impeachment, be brought out during examination of the witness is for the protection of the witness."

Because the State did not argue waiver in *Giddens*, the fact that we addressed the issue on the merits is obviously not a direct holding with respect to waiver. It does indicate an awareness and blessing of the practice, however, and constitutes an instance in which we *did* address the merits of the complaint despite the fact that the evidence was first revealed by the defendant on direct examination.

tions, may be taken by a jury not as simply weakening the credibility of the defendant's testimony, but as propensity evidence—if he engaged in that conduct once, he likely did it again—or as establishing the defendant as a bad and disreputable person generally deserving of punishment whether or not he or she committed the crime currently at issue. Indeed, given the lessons learned from common human experience, those are the more likely ways in which such evidence may be used. Lay people, and, I expect, even lawyers, may have considerable difficulty in putting what they regard as logic and common experience aside and treat this powerful experiential evidence as affecting only one's credibility as a witness.

It is this very likelihood that makes evidence of prior convictions so troublesome for defendants in criminal cases and so popular with prosecutors. It is rare, I expect, that a prosecutor will decline to offer a prior conviction even potentially admissible under the Rule because of any concern over whether, despite a limiting instruction from the judge, the jury might use the conviction as substantive propensity evidence. It is common, then, for defendants, before they decide to testify, to determine which convictions the State intends to offer and to seek to exclude those that may be particularly prejudicial. The device for presenting the issue to the court in a timely fashion—before the defendant is forced to cross the Rubicon by either testifying or electing not to do so, is the motion *in limine,* in which the court is asked to determine whether disputed evidence likely to be offered will, or will not, be admitted. If the court concludes that the conviction is admissible, it is necessarily determining that the conviction (1) is relevant to the defendant's credibility and (2) has substantial probative value as to that issue—sufficient probative value to outweigh any prejudice to the defendant. If the defendant then decides to testify, he or she must reasonably expect that the jury will conclude likewise—that, even if it does not use the conviction for any improper purpose, once the conviction is brought to its attention, it may well determine that the defendant is not a credible person and that his or her testimo-

ny, to the extent it is inconsistent with other evidence, is not worthy of belief.

Some defendants, though convinced that the court erred in its ruling that the prior conviction was admissible, have attempted to gain the best of both worlds by declining to testify, thereby avoiding revelation of the conviction, and then raising the issue on appeal, complaining that the court's allegedly erroneous decision effectively prevented them from testifying. The courts generally have rejected that attempt and have concluded that, because the prior conviction was never presented, any harm to the defendant from the *in limine* ruling was too speculative to entitle him or her to relief. The Supreme Court reached that conclusion in *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), a case relied upon in *Ohler* and therefore worthy of comment.

In *Luce,* the defendant, charged with possession with intent to distribute cocaine, moved *in limine* to preclude the Government from impeaching him with a prior conviction of simple possession of a controlled substance. Under Federal law, such a conviction was regarded as a serious crime and was therefore within the universe of crimes admissible under F.R.E. 609, and the question became whether its probative value outweighed its prejudicial effect.[5] In addressing *that issue,* the Supreme Court observed that when the defendant does not testify, (1) a reviewing court does not have a complete factual record from which to determine the likely impact of the prior conviction, (2) any possible harm flowing from the trial court's *in limine* ruling is entirely speculative, in that the ruling might have changed had the actual testimony been different from what was contained in the defendant's proffer, (3) the reviewing court has no way of knowing whether the Government would, in fact, have used the conviction as im-

---

**5.** In Maryland, of course, such a conviction would *not* be within that universe and would be inadmissible under our equivalent Rule 5–609 as a matter of law. *See Morales v. State,* 325 Md. 330, 600 A.2d 851 (1992); *State v. Giddens, supra,* 335 Md. at 216, 642 A.2d at 875 (1994) (prior conviction for simple possession of narcotics has no bearing on credibility).

peachment evidence, and (4) there is no way of knowing whether, if the *in limine* ruling was erroneous, the error was harmless. *Id.* at 41–42, 105 S.Ct. at 463–64, 83 L.Ed.2d at 447–48. For all of those reasons, the Court concluded that, to preserve for appellate review the claim of improper impeachment with a prior conviction, the defendant must testify and the conviction must be admitted into evidence. *Id.* at 43, 105 S.Ct. at 464, 83 L.Ed.2d at 448.

Like *Ohler, Luce* was not a Constitutional ruling but one based on the Court's interpretation or implementation of F.R.E. 609. Although we have not had occasion to consider precisely the same question, we reached a similar conclusion with respect to a challenged confession. In *Jordan v. State,* 323 Md. 151, 591 A.2d 875 (1991), the defendant moved, before trial, to suppress a statement he had given to the police, on the ground that it was both involuntary and given without a waiver of counsel. The trial court ruled that the statement was voluntary but that Jordan had not waived his right to counsel, and that, as a result, the confession could not be used in the State's case-in-chief but could, under *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), be used as impeachment evidence if Jordan testified. Faced with that ruling, Jordan decided not to testify but nonetheless raised the issue on appeal. Following somewhat the reasoning used in *Luce,* and indeed citing *Luce,* we concluded that the alleged injury was remote and speculative, in that there was no way to tell whether the State would actually have used the confession had Jordan testified. Blinding our eyes to reality, we suggested the prospect that Jordan may have testified consistently with the confession, thereby depriving the confession of any impeachment value. We were not inclined, we said, "to review a trial court's decision authorizing the State to use particular evidence when, as a result of a tactical decision by the defendant, the State ultimately was precluded from utilizing that same evidence." *Jordan, supra,* 323 Md. at 156, 591 A.2d at 877.

Despite the obvious differences between the Luce–Jordan situation and the one now before us, the *Ohler* Court regarded

*Luce* as a "similar, but not identical, situation," *Ohler,* 529 U.S. at 759, 120 S.Ct. at 1854, 146 L.Ed.2d at 832, and Judge Raker in this case regards *Jordan* as "analogous and therefore instructive." Any similarity, in my view, is merely facial, not real.

In *Ohler,* the defendant was charged with importation of, and possession with intent to distribute, marijuana. The Government moved *in limine* to admit her prior conviction for possession of methamphetamine, a conviction, as noted, that was admissible under the Federal rule but would be inadmissible in Maryland. The trial court ruled that the conviction was admissible. Ohler testified and, on direct examination, drew the sting by admitting the conviction, but on appeal she challenged the *in limine* ruling. She sought to avoid the consequences of the general rule precluding a party who introduces evidence from complaining that the evidence was wrongfully admitted by arguing, among other things, that to apply a waiver rule in that situation would be unfair. It would be unfair, she said, because it "compels a defendant to forgo the tactical advantage of pre-emptively introducing the conviction in order to appeal the *in limine* ruling." *Id.* at 757, 120 S.Ct. at 1853, 146 L.Ed.2d at 831–32. If a defendant is forced to wait for the conviction to be revealed on cross-examination, she complained, "the jury will believe that the defendant is less credible because she was trying to conceal the conviction." *Id.*

Evoking aspects of the somewhat outmoded and discredited "sporting theory of justice," the Court responded that both sides in a criminal trial must make tactical decisions as the case progresses. *Id.* at 757, 120 S.Ct. at 1854, 146 L.Ed.2d at 831. The defendant must choose whether to testify and whether, if he or she does, to draw the sting. *Id.* at 757–58, 120 S.Ct. at 1854, 146 L.Ed.2d at 831. The Government, on the other hand, must make the tactical decision whether to use the conviction, the Court suggesting that, if the defendant does not mount a plausible defense, the Government may decide not to risk reversal from its use. *Id.* at 758, 120 S.Ct. at 1854, 146 L.Ed.2d at 831. Ohler's approach, the Court said,

would deprive the Government of its right to wait until the defendant testifies before making that decision. *Id.* at 758, 120 S.Ct. at 1854, 146 L.Ed.2d at 832. Judge Raker finds that response compelling. I do not.

It is important to note that, prior to *Ohler,* the majority of State courts and a number of Federal courts had held that drawing the sting by revealing a prior conviction, *after the prosecutor has clearly indicated an intent to use the conviction for impeachment and the court, over the defendant's objection, has ruled that the conviction would be admitted,* does not preclude the defendant from challenging the *in limine* ruling on appeal. *See Eubanks v. State,* 516 P.2d 726 (Alaska 1973); *State v. Ellerson,* 125 Ariz. 249, 609 P.2d 64 (1980); *People v. Carpenter,* 21 Cal.4th 1016, 90 Cal.Rptr.2d 607, 988 P.2d 531 (1999); *State v. Miller,* 186 Conn. 654, 443 A.2d 906 (1982); *People v. Williams,* 161 Ill.2d 1, 204 Ill.Dec. 72, 641 N.E.2d 296 (1994); *State v. Jones,* 271 N.W.2d 761 (Iowa 1978); *People v. Harris,* 86 Mich.App. 301, 272 N.W.2d 635 (1978); *McGee v. State,* 569 So.2d 1191 (Miss.1990); *State v. Williams,* 212 Neb. 860, 326 N.W.2d 678 (1982); *State v. Ross,* 329 N.C. 108, 405 S.E.2d 158 (1991); *State v. Eugene,* 340 N.W.2d 18 (N.D.1983); *State v. Mueller,* 319 S.C. 266, 460 S.E.2d 409 (App.1995); *State v. McGhee,* 746 S.W.2d 460 (Tenn.1988); *Salt Lake City v. Holtman,* 806 P.2d 235 (Utah App.1991); *State v. Ryan,* 135 Vt. 491, 380 A.2d 525 (1977); *State v. Watkins,* 61 Wash.App. 552, 811 P.2d 953 (1991); *Nicholas v. State,* 49 Wis.2d 683, 183 N.W.2d 11 (1971); *Vanlue v. State,* 87 Wis.2d 455, 275 N.W.2d 115 (App.1978); *rev'd on other grounds,* 96 Wis.2d 81, 291 N.W.2d 467 (1980); *United States v. Puco,* 453 F.2d 539 (2d Cir.1971), *cert. denied,* 414 U.S. 844, 94 S.Ct. 106, 38 L.Ed.2d 82 (1973); *United States v. Yarbrough,* 352 F.2d 491 (6th Cir.1965); *United States v. Vanco,* 131 F.2d 123 (7th Cir.1942); *United States v. Cook,* 608 F.2d 1175 (9th Cir.1979), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980).

*Ohler* was a five-four decision that went against that strong tide. Justice Souter, writing for the dissent, noted that "[w]ith neither precedent nor principle to support its chosen

rule, the majority is reduced to saying that 'there is nothing "unfair"... about putting petitioner to her choice in accordance with the normal rules of trial.' Things are not this simple, however." *Ohler, supra,* 529 U.S. at 763, 120 S.Ct. at 1857, 146 L.Ed.2d at 834. When convictions are revealed for the first time on cross-examination, he observed, "[t]he jury may feel that in testifying without saying anything about the convictions the defendant has meant to conceal them," and its assessment of the defendant's testimony "may be affected not only by knowing that she has committed crimes in the past, but by blaming her for not being forthcoming when she seemingly could have been." *Id.* at 764, 120 S.Ct. at 1857, 146 L.Ed.2d at 835. Justice Souter concluded that " '[c]reating such an impression of current deceit by concealment is very much at odds with any purpose behind Rule 609, being obviously antithetical to dispassionate factfinding in support of a sound conclusion," that the chance to create that impression may be a tactical advantage for the Government but "disserves the search for truth," and that allowing the defendant to draw the sting promotes the fairness of trial without depriving the Government "of anything to which it is entitled." *Id.*

The Federal courts, of course, are bound by *Ohler,* but we are not, and, although we necessarily give any decision of the United States Supreme Court great respect, there is good reason not to give this one very much weight. It is not based on sound reasoning, and, as Judge Souter complained, it is antithetical to the search for truth by necessarily placing the defendant in a false light before the jury. Nor is it really supported by *Luce.* The points made in *Luce* and *Jordan* are, for the most part, legitimate. If the defendant does not testify, it is usually impossible for an appellate court to know for certain why—whether the admissibility of the conviction was the determining factor—much less what effect the conviction might have had if it had been revealed to the jury. In this situation, there is no mystery, no speculation. It was clear that the State intended to use the conviction, and, from the closeness of the case, there can be little doubt that it

would have been compelled to do so. There was no doubt as to the court's ruling or to the finality of that ruling. It was not made before trial but at the close of the State's case. Petitioner *did* testify, and the Court thus has a full factual record from which to judge the correctness of the trial judge's ruling.

Other States have declined to follow *Ohler. See State v. Daly*, 623 N.W.2d 799 (Iowa 2001) (where issue is fully argued and trial court, apprised of defendant's objection, rules evidence of prior conviction admissible, defendant need not abandon all trial tactics to preserve error); *State v. Keiser*, 807 A.2d 378 (Vt.2002); *State v. Thang*, 145 Wash.2d 630, 41 P.3d 1159 (2002); *compare State v. Dunlap*, 346 S.C. 312, 550 S.E.2d 889 (App.2001), where the defendant revealed his prior conviction in opening statement, before the ruling on its admissibility was final.

I would adhere generally to the contemporaneous objection rule, because it is a useful rule. I would bend it in this situation, however, because, when rigidly applied, it fails to serve the ends of either fairness or the search for truth. Bending it in this limited setting advances the cause of justice and creates no problem, either for the courts or for the State. The limited setting is where (1) the State makes clear that it intends to offer the conviction if the defendant testifies, (2) the defendant makes a clear objection to the evidence, (3) the court makes a definitive ruling, intended to be final, that the evidence will be admitted, and (4) the defendant testifies and, to blunt the force of the conviction, reveals it on direct examination.

For the reasons stated, I would hold that there was no waiver in this case—that petitioner did not lose his right to challenge the court's ruling that the conviction was admissible by revealing the conviction during direct examination.

### (3) *Admissibility of the Conviction*

As noted, despite its disagreement on the issue of waiver, three judges would hold that the prior conviction was admissi-

ble. That holding rests on two prongs: (1) that possession with intent to distribute a controlled dangerous substance is a crime relevant to credibility and is therefore within the universe of crimes admissible for impeachment purposes, and (2) that in this case, the probative value of that conviction, as impeachment evidence, outweighed the danger of unfair prejudice to petitioner. I disagree with both conclusions.[6]

Until 1995, this Court had not ruled whether a conviction for possession with intent to distribute a controlled dangerous substance is within the universe of crimes admissible for impeachment purposes under Rule 5–609. In *Lowery v. State*, 292 Md. 2, 437 A.2d 193 (1981), we held, and in *Morales v. State*, 325 Md. 330, 339, 600 A.2d 851, 855 (1992), we confirmed, that mere possession of a controlled dangerous substance (PCP) was neither an infamous crime nor one relevant to credibility and was therefore inadmissible as impeachment evidence. In *Morales*, we concluded that possession with intent to distribute a controlled dangerous substance was not an infamous crime but found it unnecessary in that case to determine whether a conviction for that offense could "ever be used to impeach a witness." *Morales, supra*, 325 Md. at 339, 600 A.2d at 855.

In *Giddens v. State*, 97 Md.App. 582, 631 A.2d 499 (1993), the question arose whether a conviction for distribution of cocaine was usable as impeachment evidence under the predecessor rule to Rule 5–609. Because it was clear that the offense was not an infamous crime, the particular question was whether it had any relevance to credibility. Germane to that determination was the fact that, in *Foster v. State*, 304 Md. 439, 499 A.2d 1236 (1985), *cert. denied*, 478 U.S. 1010, 106

---

**6.** A prior conviction may be used to impeach in several different ways. If, for example, a defendant testifies that he/she has led a completely blameless life or had never before been in any trouble, a prior conviction may be used as direct impeachment of that statement. That is not the context here. The issue now before us is whether the conviction is admissible under Rule 5- 609, to impeach the witness's general credibility, not any particular statement. In speaking of admissibility of convictions as impeachment evidence, I have only that context in mind.

S.Ct. 3310, 92 L.Ed.2d 723 (1986), this Court adopted what appears to be the majority rule that, when presenting evidence of a conviction under Rule 5-609, only the fact of the conviction—the name of the crime, the date, and the court— may be disclosed and that "ordinarily one may not go into the details of the crime by which the witness is being impeached." *Id.* at 470, 499 A.2d at 1252 (quoting *State v. Finch*, 293 N.C. 132, 235 S.E.2d 819, 824-25 (1977)). That principle was confirmed in *State v. Woodland*, 337 Md. 519, 524-25, 654 A.2d 1314, 1317 (1995).

The Court of Special Appeals noted that the criminal code listed over 200 substances as controlled dangerous substances, plus various salts, isomers, derivatives, and compounds of those substances, and that a person could violate the law by selling a ton of cocaine to sub-dealers throughout a community or by giving a friend a marijuana cigarette. *Giddens, supra,* 97 Md.App. at 591, 631 A.2d at 503. The distribution could occur in an open air drug market or in the privacy of one's home, furtively in the back of a car or on a public street in broad daylight; it could be part of a secret business enterprise or simply a gift to an acquaintance. *Id.* "The net," the court said, "is very large and encompasses a wide variety of conduct, and therein lies the problem." *Id.*

The court pointed out that, in *Ricketts v. State*, 291 Md. 701, 436 A.2d 906 (1981), this Court had declared a conviction for indecent exposure inadmissible for just that reason—that the name of the crime "says little about the conduct for which the person was convicted" and that "the gamut of offenses and circumstances that fall within the ambit of the crime are so widely varied that, while one person may indeed have shown a moral depravity sufficient to impact upon his credibility, another may have committed a very minor infraction indicative of nothing more than momentary poor judgment perhaps dictated by necessity." *Giddens v. State*, 97 Md.App. at 591, 631 A.2d at 503 (quoting *Ricketts, supra*, 291 Md. at 710, 436 A.2d at 911). We concluded in *Ricketts* that the crime "is so ill-defined that it causes the factfinder to speculate as to what conduct is impacting on the defendant's credibility, it should

be excluded," that "since the issue is always the truth of the witness, where there is no way to determine whether a crime affects the defendant's testimony simply by the name of the crime that crime should be inadmissible for purposes of impeachment." *Ricketts*, 291 Md. at 713, 436 A.2d at 913.

That concern, the Court of Special Appeals concluded, was equally justified with respect to the crime of distribution, which "does not, inherently and of itself, indicate that the person is not to be believed." *Giddens v. State*, 97 Md.App. at 591, 631 A.2d at 503. Although the behavior is criminal, it is not necessarily dishonest and "does not necessarily involve surreptitious conduct or moral depravity sufficient to suggest a lack of credibility." *Id.* Citing Department of Justice statistics from 1990, the court pointed out that there were nearly 112,000 convictions for drug trafficking in State courts in 1988 and posited that many of those convictions were of "of low-level street dealers who are caught because they openly sell drugs to undercover police officers on public streets, sidewalks, and parking lots or are observed in such places openly selling to other passerby." *Id.* at 592, 631 A.2d at 503–04.[7]

This Court disagreed with the intermediate appellate court's conclusion. In *State v. Giddens*, 335 Md. 205, 642 A.2d 870 (1994), though confirming our earlier holdings that convictions for mere possession of controlled dangerous substances had no bearing on credibility and were therefore inadmissible as impeachment evidence, we held, *without noting any supporting empirical evidence*, that "an individual convicted of cocaine distribution would be willing to lie under oath." *Id.* at 217, 642 A.2d at 876. We cited *United States v. Ortiz*, 553

---

7. There has been a dramatic increase in the number of such convictions since 1988. The DOJ Sourcebook for 2000 shows that, in 1996, there were over 212,000 felony convictions in State courts for drug trafficking, 92% of which (over 196,000) were based on guilty pleas. 1998 showed a modest decline. There were 195,183 convictions in State courts for felony drug trafficking, 95% of which (185,427) were based on guilty pleas. *See* U.S. Department of Justice Bureau of Justice Statistics Bulletin, *Felony Sentences in State Courts, 1998*, Table 9 at 8.

F.2d 782, 784 (2d Cir.1977) for the proposition that "a narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie," and, on that premise, held that a prior conviction for distribution of cocaine was relevant to credibility and therefore admissible under Rule 5–609. *Giddens, supra,* 335 Md. at 217, 642 A.2d at 876.

In retrospect, *Ortiz* does not appear to me to be a particularly persuasive case. For one thing, it was a two-to-one decision authored by a District Court judge over the dissent of a Court of Appeals judge. Moreover, *Ortiz* was a case like *Luce* and *Jordan,* in which, on the basis of an *in limine* ruling that prior convictions of heroin distribution would be admissible, the defendant never testified and the convictions never got into evidence. The Second Circuit Court of Appeals never should have reached the merits and, under *Luce,* could not do so today. Finally, the court did not make a determination as a matter of law because, at the time, the Federal rule did not directly require that the conviction be relevant to credibility. It required only that the crime be punishable by death or more than a year in prison and that the probative value of the conviction outweigh its prejudicial effect. In looking at that balance, the appellate court said that the trial judge, in his discretion, was "entitled to recognize that a narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment . . . ."

Acknowledging that the crime of distribution "may include activity that would have little bearing on a witness's credibility," *State v. Giddens,* 335 Md. at 217, 642 A.2d at 876, we nonetheless somehow took judicial notice, without citing any evidence in support, that "those convicted of cocaine distribution are almost always 'drug dealers' in the traditional sense" and then jumped to the ultimate conclusion that "it is reasonable to conclude that a person is less credible because he or she is a convicted drug dealer." *Id.* at 218, 642 A.2d at 876. That was quite a leap, of course, from making assumptions

about cocaine dealers and then applying those assumptions to any "convicted drug dealer," including one who distributed a marijuana cigarette to a friend.

Apart from that unwarranted leap, the cases cited for that proposition, to me, are anything but persuasive. The first, other than *Ortiz*, was *State v. Pierce*, 107 Idaho 96, 685 P.2d 837 (App.1984), in which the Idaho court, though acknowledging that it would be a strain to characterize delivery of heroin as a crime of dishonesty, concluded that, when coupled with two other felonies of which the defendant had been convicted—escape and disruption of a jail—showed "a pattern of disrespect for law and lawful authority" and that "such established disrespect is relevant to evaluating whether Pierce would take an oath seriously as a witness and whether he would hesitate to testify untruthfully if it seemed advantageous to do so." *Id.* at 844. The test in Maryland is not "a pattern of disrespect for law and lawful authority," but whether the particular crime is relevant to credibility. The second case cited, *People v. Washington*, 85 Ill.App.3d 522, 40 Ill.Dec. 954, 407 N.E.2d 185 (1980), followed the Illinois law that unlawful *possession* or delivery was probative of credibility. That, too, runs counter to our case law. The third case, *State v. Lagares*, 247 N.J.Super. 392, 589 A.2d 630 (App.Div.1991), *aff'd in part, rev'd in part on other grounds*, 127 N.J. 20, 601 A.2d 698 (1992), applied the New Jersey law that the conviction "of any crime" was admissible as impeachment evidence and allowed evidence of convictions for both simple possession of marijuana and possession with intent to distribute marijuana.

What *State v. Giddens* reveals to me is an unwarranted and uncritical acceptance of assumptions that are simply too general and decisions in other jurisdictions that follow different rules than we do. We compounded that error, in both logic and judgment, in *State v. Woodland*, 337 Md. 519, 654 A.2d 1314 (1995), in which we blindly followed *Giddens* and held that, as distribution of CDS was an impeachable offense, so was possession with intent to distribute such a substance. Parroting the statement from *Ortiz* that a narcotics trafficker

lives a life of secrecy and dissembling and is prepared to say whatever is required, we concluded that "[o]ur reasoning in *Giddens* is therefore as applicable to possession with intent to distribute drugs as to distribution." *Woodland,* at 524, 654 A.2d at 1316.

For the reasons noted, I do not accept the conclusion stated in *Ortiz* as a universal proposition. To me, the Court of Special Appeals got it right in *Giddens v. State.* The majority of convicted drug traffickers—convicted either of distribution or possession with intent to distribute—I expect are the low-level street dealers who carry on their business quite openly. The very numbers suggest that to be the case. I seriously doubt that we are convicting close to 200,000 druglords each year in State courts, especially, in light of long mandatory sentences applicable to such persons, on guilty pleas.[8] The drug importers and kingpins may well possess the attributes ascribed in *Ortiz,* but they do not constitute the majority (or even a sizable minority) of the people appearing in the State courts. If there *was* some validity to the *Ortiz* notion, moreover, it would apply as well to nearly *any* criminal. Most people who commit crimes, other perhaps than episodic crimes of passion, do so in ways that will avoid discovery, and, in that sense, most convicted criminals, regardless of the crime, can be said to act furtively and in manners that will avoid the truth coming to light. Persons who simply possess drugs unlawfully do not advertise the fact; they secrete the drugs and, upon confrontation, are as likely to dissemble as those who possess drugs as part of a trafficking scheme. If we do not accept that possession is relevant to credibility, what makes possession with intent to distribute relevant?

The Court, I fear, went out of bounds in *State v. Giddens* and extended that march in *State v. Woodland.* Juries, I think, are quite capable of judging credibility without our

8. The Department of Justice statistics bear that out as well. In 1998, the mean maximum sentence of a drug trafficker convicted in State court was 41 months—less than three-and-a-half years. *See Felony Sentences in State Courts, 1998, supra,* Table 8 at 8.

throwing into the credibility mix evidence that really has no relevance, or, at best, only the most marginal relevance, to credibility. We should reverse *Giddens* and *Woodland* and hold that these crimes are not admissible under Rule 5–609.

Finally, even if *Giddens* and *Woodland* are to remain the law, it is clear to me that, in this case, the trial court abused its discretion in concluding that the probative value of the conviction outweighed its prejudicial impact. As noted, the conviction was more than six years old and occurred while petitioner was a teenager. We do not know what substance he possessed with intent to distribute or any of the circumstances surrounding the offense. We do not know whether the conviction was based on a guilty plea, which might show some openness rather than secretiveness and dissembling. Under the circumstances, the probative value as to credibility, to me, was virtually nil. On the other hand, given the State's theory of the case and the significant conflict in the evidence, the danger of the jury using the evidence improperly was great. Despite the limiting instruction, which runs counter to most human experience, the jury could very well have concluded from the conviction that petitioner was, indeed, conducting a drug operation in front of the Mitchell home, which would bolster the prosecutor's argument as to the motive for the assault.

For these reasons, I would reverse the judgment of the Court of Special Appeals and direct that court to reverse the judgment of the Circuit Court. Chief Judge Bell and Judge Eldridge have authorized me to state that they join in this opinion.